**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 18, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KENT ERIC LEBERE,

      Petitioner – Appellant,

v.

No. 11-1090

JAMES ABBOTT, Warden; JOHN W.
SUTHERS, the Attorney General of the
State of Colorado,

      Respondents – Appellees.

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:03-CV-01424-WDM)**

---

James L. Volling, Faegre & Benson LLP, Minneapolis, Minnesota, (Jesseca R.F.
Cockson, Martin S. Chester, Christina C. Semmer, and Daniel G. Prokott, Faegre &
Benson LLP, Minneapolis, Minnesota; Laurence W. DeMuth, III, Faegre & Benson LLP,
Boulder, Colorado; and Jennifer K. Harrison, Faegre & Benson LLP, Denver, Colorado,
with him on the briefs), for Petitioner – Appellant.

John D. Seidel, Senior Assistant Attorney General, (John W. Suthers, Attorney General,
with him on the brief), State of Colorado, Denver, Colorado, for Respondents –
Appellees.

---

Before **KELLY**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

---

**O'BRIEN**, Circuit Judge.

---

Kent LeBere is serving a 60-year term of imprisonment imposed by a Colorado court as a result of his conviction for second-degree murder and second-degree arson. In his 28 U.S.C. § 2254 petition for habeas relief, he contends the State relied on perjured testimony and withheld potentially exculpatory evidence material to his defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The only question presented is whether federal courts may consider his claim.[1] It involves the interplay between state and federal procedural rules.

The procedural history of this case is somewhat convoluted (as we will detail) but it can be succinctly summarized. After LeBere began serving his sentence and while his direct appeal was pending, Ronnie Archuleta, a key witness against him, recanted his testimony. LeBere promptly moved for a new trial based upon that newly discovered evidence. His new trial motion became a collateral part of his direct appeal and, after a hearing, it was denied. LeBere then brought this habeas petition expressly claiming, for the first time, a *Brady* violation based on the undisclosed acts of a detective who allegedly encouraged Archuleta to lie at the trial. The district judge abated these habeas proceedings to permit LeBere to exhaust his newly minted claim in the state courts. He then filed a petition for post-conviction relief with the Colorado trial court asserting the *Brady* claim. The petition was not decided on the merits; post-conviction relief was denied because the *Brady* claim was, *sub silento*, part and parcel of his newly discovered

_____

[1] We granted a certificate of appealability on this issue.

evidence claim, which was addressed and decided on direct appeal. Importantly, the *Brady* issue was not considered to have been procedurally barred because it was not timely raised (waiver or forfeiture); it was considered to have been subsumed in the new trial motion and, in effect, decided when the new trial motion was denied. And since it had been decided on direct appeal, under Colorado procedures it could not be revisited in post-conviction proceedings (successive bar). LeBere returned to federal court with the *Brady* claim front and center. The district judge concluded it was procedurally barred by Colorado's successive bar rule.

LeBere contends Colorado's successive bar has no effect on the availability of habeas review of his particular claims. He is correct. We reverse.

## FACTUAL BACKGROUND

On October 16, 1998, Linda Richards's van was set ablaze from the inside and abandoned at a car wash on the west side of Colorado Springs, Colorado. Her partially clothed remains were found wedged between the two front seats of the van. An autopsy confirmed she had died from strangulation before the fire was set.

The State of Colorado charged LeBere with Richards's murder. He pled not guilty and the case went to trial.

The prosecution's case was primarily circumstantial. LeBere was observed leaving a bar on the east side of town with Richards hours before her death. Later, he was viewed on the store's security camera as he caught a cab ride home from a convenience store located several blocks from the car wash. The cab driver identified

him as the man he picked up at the convenience store at 2:45 a.m., less than an hour after witnesses spotted the burning van. Although LeBere admitted to leaving the bar with Richards, he initially provided conflicting stories about what happened next. He told the police two stories (he walked home from the bar and Richards drove him home) and told his aunt a third (Richards had driven him across town to go to another bar, he became sick, left her car, walked around until he found the convenience store, got something to eat and called a cab).

There was no physical evidence linking LeBere to the murder. In addition, Yvonne Castro, the only witness who actually saw the van prior to the fire, testified to observing a man standing next to it. She described the man as wearing light clothing and a fishing hat. LeBere, however, was wearing dark clothing and no hat. Tellingly, Castro viewed the convenience store's surveillance footage of LeBere on the night of the murder and did not identify LeBere as the man she saw at the car wash.

The State's only direct evidence was the testimony of Ronnie Archuleta, an inmate who had been housed with LeBere shortly after his arrest. Archuleta's testimony included a story LeBere had related to him. In that story, LeBere admitted to raping Richards, strangling her to death, and burning her van to conceal the evidence. According to Archuleta, LeBere said he killed Richards so she would not be able to identify him from a distinctive tattoo on his arm.

As part of his defense, LeBere presented evidence about another person—Richards's fiancé, Russell Herring. In his testimony, Herring admitted the couple's

relationship had been tumultuous, poisoned by infidelity and punctuated by bouts of violence, and he confessed to having physically assaulted Richards in the past.  He also testified as follows:  The couple argued the evening of Richards's death resulting in Herring telling Richards he was considering ending their relationship.  When Richards left the house Herring figured, correctly, she was headed for a bar.  He stayed home that night.

Herring's testimony about staying home was challenged.  The defense presented evidence of his car having been driven the night of the murder.  Specifically, a neighbor heard a noise which sounded like a truck leaving the house.  Moreover, Richards's father saw the vehicle the following morning and noticed an accumulation of water on the windshield.  He described it as dew, but a meteorologist testified the weather conditions made it scientifically impossible for dew to have formed.  According to the meteorologist, there could be only two explanations for the water:  either someone had placed it on the windshield or someone had been breathing inside the car.

The jury convicted LeBere of second-degree murder and second-degree arson, but acquitted him of the remaining counts:  first-degree murder committed after deliberation, felony murder arising from sexual assault, and manslaughter.[2]  The trial court sentenced

_____

[2] LeBere tells us he was also acquitted of sexual assault, but his statement is not supported by the state court filings.  It is irrelevant to our decision in any event.

him to 48 years imprisonment on the murder conviction and 12 years on the arson conviction, to be served consecutively.

## PROCEDURAL BACKGROUND

In February 2000, while LeBere's case was pending on direct appeal, Archuleta contacted LeBere's attorney and recanted his trial testimony. He said the whole story was fabricated; LeBere had never confessed. Worse, he said his false testimony had been induced by the lead detective on the case, J.D. Walker, who visited him in jail and promised to push for favorable treatment in his pending criminal case if he would implicate LeBere in the Richards murder. According to Archuleta, Walker knew the testimony Archuleta gave at trial was false—LeBere had never confessed. Moreover, Walker furnished Archuleta with a copy of the police reports, presumably so he could come up with a plausible confession story.

Relying on the recantation, LeBere moved for a new trial based on newly discovered evidence. *See* Colo. R. Crim. P. 33(c). The Colorado Court of Appeals abated the appeal and remanded the case to the trial court to resolve issues regarding the newly discovered evidence. The trial judge held an evidentiary hearing. Archuleta did not appear, fearing arrest on outstanding warrants.[3] The judge concluded the new

---

[3] The record is unclear as to how Archuleta's recantation was presented at the hearing. He did not produce an affidavit attesting to the information he provided to LeBere's attorney until June 2004. The affidavit appears to have been first presented to any court as an attachment to LeBere's amended § 2254 petition, filed in August 2009.

(Continued . . .)

evidence would not have changed the outcome of the trial and denied the motion.[4]

Significant, in his view, was LeBere's acquittal on the counts of first-degree murder with deliberation and felony murder arising from sexual assault, the two charges for which Archuleta's testimony provided direct support. This indicated the jury did not believe Archuleta's testimony. He also concluded there was substantial other evidence of guilt. The appellate court upheld the decision and affirmed the conviction. The Colorado Supreme Court declined review. He did not seek review from the United States Supreme Court, thus ending his direct appeal.

LeBere initiated pro se federal habeas proceedings in July 2003. He raised, *inter alia*, error in the state courts' denial of his motion for new trial based on newly discovered evidence. The State responded, claiming dismissal was appropriate for failure to allege a violation of federal law, *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), and even assuming such a federal claim could be divined from his petition, it was

---

[4] To receive a new trial based on newly discovered evidence, the defendant must show: (1) the new evidence was unknown to the defendant prior to trial; (2) the defense must have exercised due diligence in finding favorable evidence prior to trial; (3) the newly discovered evidence is material to the issues and not cumulative or impeaching; and (4) on retrial the newly discovered evidence would probably result in an acquittal. *People v. Gutierrez*, 622 P.2d 547, 559-60 (Colo. 1981). The trial judge determined the first two factors had been satisfied. He was less clear as to the third factor—first suggesting Archuleta's recantation was merely impeachment evidence but then indicating it was material to the defense theory of police misconduct. In any event, he was clear the fourth factor had not been met.

unexhausted.[5]  Counsel for LeBere entered their appearance and moved to stay the

federal proceedings to allow LeBere to return to state court and exhaust his claims.  The

district judge granted the motion.[6]

With the assistance of new counsel, LeBere filed a motion for post-conviction

relief in state court pursuant to Colo. R. Crim. P. 35(c).  This time, and for the first time,

LeBere couched his claim regarding Archuleta's recantation and Walker's misconduct as

a federal *Brady* claim.  "A review of the Motion," the judge stated, "leads to the

conclusion that the basis of the Motion involves the purported recanted testimony of

Ronnie Archuleta . . . . [T]he grounds of this Motion [are] the same as those previously

raised and determined on appeal."  (App'x Vol. 2 at 351-52.)  The Colorado Court of

Appeals affirmed, relying on Colo. R. Crim. P. 35(c)(3)(VI), which requires dismissal of

any claim that was raised previously (absent two circumstances not present here).[7]  While

_____

[5] LeBere's pro se habeas petition included three claims, including error regarding
the denial of his motion for new evidence.  The State argued all three claims were
unexhausted.

[6] When counsel made their appearance for LeBere, they sought a stay of the
habeas proceedings to allow LeBere to exhaust his claims in state court.  However, when
LeBere returned to state court, he did not seek to exhaust any of the legal theories raised
in his pro se habeas petition; he instead raised new legal theories, including *Brady*.  When
LeBere sought to amend his habeas petition, the State opposed the amendment.  It argued
that while it had not opposed a stay to allow exhaustion of the claims raised in the pro se
petition, it did oppose a stay for exhausting new claims.  *See infra* n.8.

[7] LeBere's Rule 35(c) post-conviction motion was filed April 21, 2004.   Rule
35(c)(3)(VI), which imposes a mandatory bar for claims "raised and resolved" in a prior
appeal or post-conviction proceeding, became effective July 1, 2004, and governs only

(Continued . . .)

recognizing the legal basis for the claim was "superficially different," it decided the factual basis for the *Brady* claim duplicated the factual basis supporting the motion for new trial. (*Id.* at 358.) Thus, the *Brady* claim was "merely a rephrasing of the motion for new trial," and it would "not revisit what is essentially the same issue in a second appeal." (*Id.*) To no avail, LeBere petitioned for review by the Colorado Supreme Court.

LeBere then returned to federal court with an amended 28 U.S.C. § 2254 petition. For the first time in the federal proceedings, LeBere raised a *Brady* claim.[8] The district judge traced the history. LeBere's newly discovered evidence claim was presented and decided as part of his direct appeal. But the judge correctly concluded that claim sounded exclusively in state law; it was insufficient to give notice of the federal claim—a *Brady* violation. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts . . . ."). In short, LeBere failed to exhaust his *Brady* claim on direct appeal. He did, however, raise it to

petitions filed after that date. *See People v. Versteeg*, 165 P.3d 760, 763 (Colo. App. 2006) (noting that the amended version of Rule 35 applies only to motions filed after the amendment's effective date—July 1, 2004); *People v. Wenzinger*, 155 P.3d 415, 418-19 (Colo. App. 2006) (discussing amendments to Rule 35 and applying Rule 35(c)(3)(VI) to a petition filed after July 1, 2004). Nevertheless, the Colorado Court of Appeals applied the new rule to LeBere's motion. In light of our disposition it makes no difference.

[8] The State opposed the amendment, claiming the *Brady* claim was untimely because the district court had only stayed the action to allow LeBere to return to state court to exhaust those claims raised in his initial pro se § 2254 petition and the *Brady* claim was not a claim in that petition and did not relate back to that petition under Fed. R. Civ. P. 15. The district judge saw it differently. He decided the *Brady* claim related back to the newly discovered evidence claim in the original petition and allowed amendment of the § 2254 petition to include the *Brady* claim. The State does not appeal from that decision.

the Colorado courts on collateral review. The judge nevertheless decided it was not fairly presented because the post-conviction court concluded it was an impermissible, successive claim (one that had already been decided). Thus, it was not exhausted. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (exhaustion requirement requires the federal claim to have been "*fairly presented*" to the state courts). In that regard he erred; if the claim had been earlier decided by the Colorado court it was, necessarily, exhausted.

## DISCUSSION

We review a state court's decision under appropriate habeas standards. If the state court, in fact, reached the merits our review is deferential; otherwise it is de novo. *See Mitchell v. Gibson*, 262 F.3d 1036, 1045 (10th Cir. 2001). However, "[w]hen a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review." *Cone v. Bell*, 556 U.S. 449, 466 (2009).

In his Rule 35(c) post-conviction proceedings, LeBere presented his *Brady* claim to the state courts. But the post-conviction court did not resolve the *Brady* claim on the merits. Instead, it declined review under a Colorado rule barring post-conviction review of a claim raised and resolved in a previous proceeding. *See* Colo. R. Crim. P. 35*(c)*(3)(VI). Generally, when a state court dismisses a federal claim on an "independent and adequate" procedural ground, the doctrine of procedural default forecloses federal

- 10 -

review.  *Coleman*, 501 U.S. at 729-32.  The question, then, is whether the application of the state's successive bar presents a barrier to federal review.  Not necessarily.

In *Cone*, the Supreme Court decided a state court's refusal to consider the merits of a claim because the claim was previously determined is not a proper basis for denying federal habeas review.  *Cone*, 556 U.S. at 466.  This is not a novel proposition.  We are among several circuits to have previously reached the same conclusion, *Page v. Frank*, 343 F.3d 901, 907 (7th Cir. 2003); *Brecheen v. Reynolds*, 41 F.3d 1343, 1358 (10th Cir. 1994); *Bennett v. Whitley*, 41 F.3d 1581, 1582-83 (5th Cir. 1994); *Silverstein v. Henderson*, 706 F.2d 361, 368 (2d Cir. 1983), and the Supreme Court had implied as much nearly two decades earlier in *Ylst v. Nunnemaker*, 501 U.S. 797, 804 n.3 (1991). *Cone's* contribution was to confirm that the principle applies with equal force where a state court refuses to consider a federal claim on the erroneous premise that it had already been adjudicated.  *Cone*, 556 U.S. at 466-67.

The facts in *Cone* are on all fours with this case.  After he was convicted and sentenced to death, Gary Cone appealed his conviction, arguing prosecutors had violated state law by failing to disclose evidence strengthening his defense—he committed the murders while in the throes of a drug-induced psychosis.  *Id*. at 454, 457.  His appeal was unsuccessful, and the Tennessee courts denied post-conviction relief.  *Id.* at 457.  Later, Cone filed a second petition for post-conviction relief in which he argued the prosecution had violated *Brady* by failing to disclose evidence bolstering his insanity defense and mitigating the prosecution's case for the death penalty.  *Id*. at 457-60.

- 11 -

The post-conviction court denied review because, it concluded, the *Brady* claim had been previously determined on direct appeal; the appellate court affirmed and the state supreme court and United States Supreme Court denied review. *Id*. at 460-61. Cone then raised his *Brady* claim in a § 2254 petition in federal court. *Id*. at 461. The district judge denied relief, concluding the *Brady* claim had been waived (not timely presented in state court) and was therefore procedurally defaulted. *Id*. The Sixth Circuit affirmed on a slightly different ground, explaining it was barred from reaching the merits of the claim because the state post-conviction courts had deemed the claim "previously determined or waived" under Tennessee law. *Id*. at 462 (quotations omitted).

The Supreme Court vacated the Sixth Circuit's decision and remanded to the district court. *Id.* at 452. While there was some confusion as to whether the state appellate court had refused to reach the merits of the *Brady* claim because it had been previously determined or because it had been waived, the Supreme Court concluded the basis for the decision was the former—it had been previously determined. *Id.* at 467-68. The state court's decision rested on a "false premise," the Supreme Court explained, because the claim Cone raised on direct appeal arose under state law, not *Brady*. *Id*. at 466. In any event, the application of Tennessee's successive bar did not preclude federal review: "When a state court refuses to adjudicate a claim on the ground that it has been previously determined, the court's decision does not indicate that the claim has been procedurally defaulted. To the contrary, it provides strong evidence that the claim has

- 12 -

already been given full consideration by the state courts and thus is *ripe* for federal adjudication." *Id*. at 467.

The Court's decision in *Cone* controls the outcome of this case. As in *Cone*, LeBere raised a state-law nondisclosure claim on direct appeal and, based on the same facts, a *Brady* claim on post-conviction review. And, as in *Cone*, the post-conviction court applied the state bar on successive claims in declining to reach the merits. If the application of the successive bar in *Cone* did not affect the availability of federal review, the same should be true for a nearly identical rule here.

We can discern only one potentially material distinction between the two cases, and it relates to the scope of the applicable successive bars. *In Cone*, hearings on petitions for post-conviction relief could not be based on claims "previously determined," meaning a court had "ruled on the merits of the claim after a full and fair hearing." *Id.* at 458 n.8 (quotations omitted). The Colorado successive bar appears to sweep more broadly, if only slightly. The rule limits review to claims not "raised and resolved" in a prior proceeding. *See* Colo. R. Crim. P. 35(c)(3)(VI). Colorado courts have provided clarification—the rule prohibits not only claims previously decided on the merits, but also claims where review "would be nothing more than a second appeal addressing the same issues on some recently contrived constitutional theory." *People v. Rodriguez*, 914 P.2d 230, 249 (Colo. 1996) (quotations omitted). In other words, it precludes claims raising new legal theories based on old facts. *Id.* (citing *Sanders v. United States*, 373 U.S. 1, 16 (1963)); *see also People v. McDowell*, 219 P.3d 332, 336-37 (Colo. Ct. App.

- 13 -

2009) (Rule 35 prevented defendant's outrageous governmental conduct claim based on police officers' and the district attorney's interrogation because it was previously decided on direct appeal although couched in terms of a violation of *Miranda v. Arizona*, 384 U.S. 436 (1966)).

The apparent distinction disappears upon closer examination of the two rules. Like Colorado's Rule 35, Tennessee's successive bar rule was designed in the mold of its federal counterpart concerning successive § 2255 motions. *See* 28 U.S.C. § 2255(h); *People ex. rel. Wyse v. Dist. Court In and For Twentieth Judicial Dist.*, 503 P.2d 154, 156 (Colo. 1972); *People v. Sherman*, 172 P.3d 911, 915 (Colo. Ct. App. 2006); *Johnson v. State*, No. 02C01-9111-CR-00237, 1994 WL 90483, at *13 & n.4 (Tenn. Crim. App. Mar. 23, 1994) (unpublished); Gary L. Anderson, *Post-Conviction Relief in Tennessee— Fourteen Years of Judicial Administration Under the Post-Conviction Procedure Act*, 48 Tenn. L. Rev. 605, 609-610, 659 (1981). And like the Colorado rule, the Tennessee provision has been interpreted to cover claims that couch old facts under new legal principles. *Aaron v. State*, No. M2006-01983-CCA-R3-PC, 2008 WL 203394, at *4-5 (Tenn. Ct. App. Jan. 22, 2008) (unpublished) (finding claim based on sufficiency of the evidence was previously determined on direct appeal despite petitioner's attempt to couch it in different legal terms); *Payne v. State*, No. 02C01-9703-CR-00131, 1998 WL 12670, at *10 (Tenn. Crim. App. Jan. 15, 1998) (unpublished) (claims were previously determined even though not previously addressed in terms of ineffective assistance of counsel); *Bates v. State*, No. 03C01-9208-CR-00279, 1993 WL 144618, at *5 (Tenn.

- 14 -

Crim. App. May 6, 1993) (unpublished) ("[F]acts which are presented and ruled upon on the merits . . . are . . . 'previously determined.'"). Notwithstanding some minor textual differences, then, the two rules are coextensive.

More than that, they are cut from the same cloth. Both rules represent legislative tweaks on the common law doctrine of res judicata, both are modeled on the Supreme Court's decision in *Sanders v. United States*, 373 U.S. 1 (1963), and both were created to serve the same principle—finality. *Rodriguez*, 914 P.2d at 249; *Sherman*, 172 P.3d at 916; *Bledsoe v. State*, No. W2000-02701-CCA-R3-PC, 2001 WL 1078269, at *3-4 (Tenn. Crim. App. Sep. 14, 2001) (unpublished); *Johnson*, 1994 WL 90483, at *13; *Bates*, 1993 WL 144618 at *5; Anderson, *supra*, 48 Tenn. L. Rev. at 607 n.3, 611, 626, 659. Much like the doctrine of res judicata, their application goes to a previous determination of the merits of a case, which is what the Court was driving at in *Cone* when it said a procedural bar covers claims that have not been fairly presented, not claims that have been presented more than once. *See Cone*, 556 U.S. at 467.

The State's attempt to limit *Cone* to its facts is misguided. In several places it simply misreads the decision. Elsewhere it conjures up distinctions either not there or otherwise having no bearing on the application of *Cone* to this case. For instance, it stakes its argument on the incorrect premise that *Cone* "assumed the very fact in dispute here," namely, "the claims presented each of two times to state courts were *federal in nature* and *identical*." (Respondent's Supp. Br. at 7, 9.) This could not be further from the truth. Far from assuming the two claims were identical, the Supreme Court

- 15 -

concluded Cone did not present a *Brady* claim on direct appeal, and even faulted the State for "conflating" *Brady* with the state-law nondisclosure claim. 556 U.S. at 459, 466. The State tries to cherry-pick excerpts from *Cone* that purportedly shore up its interpretation, but the passages it cites are out of context. The argument is impossible to reconcile with the unambiguous language of the Court: "The Tennessee post-conviction court denied Cone's *Brady* claim after concluding it had been previously determined following a full and fair hearing in state court. That conclusion rested on a false premise: Contrary to the state courts' finding, Cone had not presented his *Brady* claim in earlier proceedings and, consequently, the state courts had not passed on it." *Id.* at 466 (citation omitted).

The State tries to distinguish *Cone* by pointing to uncertainty as to which procedural bar—the waiver rule or the bar on successive claims—had been invoked by the Tennessee courts. While initially there may have been some uncertainty in this regard, in reaching its decision the Supreme Court concluded the Tennessee appellate court had applied the successive bar, not the waiver rule, in declining to reach the merits of the *Brady* claim. *Id.* at 467-69. It was by way of this conclusion that the Court arrived at its broader holding—a state court's determination that a claim has already been adjudicated does not preclude federal habeas review.

The State makes much of the fact that Colorado's successive bar mirrors the one applied by federal courts under former Rule 9(b) of the Rules Governing § 2254 Cases in the United States District Courts, which allowed dismissal of a second or successive § 2254 petition if it failed to allege new or different grounds for relief and the prior

- 16 -

determination was on the merits.[9]  Under the Supreme Court's decision in *Sanders*, the Rule encompassed new legal theories based on previously asserted facts.[10]  373 U.S. at 16.  It is "inconceivable," the State contends, that *Cone* "intended to tell states that their version of the *Sanders* rule is inadequate to prevent habeas review, when federal courts use it every day for that precise purpose."  (Respondent's Supp. Br. at 13.)

---

[9] The State cites Rule 9(b) of the Rules Governing § 2254 Cases in the United States District Courts.  That rule was amended in 2004.  Prior to 2004, subsection (b) allowed dismissal of a second or successive petition "if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits . . . ."  The 2004 amendments changed subsection (b) to reflect provisions in 28 U.S.C. § 2244 which require a petitioner to obtain approval from the appropriate court of appeals before filing a second or successive petition.  *See* Rule 9 of the Rules Governing Section 2254 Cases in the United States District Courts advisory committee's notes to 2004 amendments.

Under § 2244 a court of appeals may authorize the filing of a second or successive application only if the applicant shows (1) "the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or (2) "the factual predicate for the claim could not have been previously discovered through the exercise of due diligence" and "the facts underlying the claim . . . would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  *See* 28 U.S.C. § 2244(b)(2),(3)(C).

[10] *Sanders* involved the interpretation of 28 U.S.C. § 2255 and its bar on second or successive § 2255 motions.  373 U.S. at 3-4, 12.  Nevertheless, Rule 9(b) of the Rules Governing § 2254 Cases appears to have been modeled after *Sanders*.  *See* Rule 9 of the Rules Governing Section 2254 Cases in the United States District Courts advisory committee's notes to 1976 adoption.  And we have applied *Sanders* when applying Rule 9(b) of the Rules Governing § 2254 Cases.  *See, e.g., Parks v. Reynolds*, 958 F.2d 989, 994 (10th Cir. 1992); *Robison v. Maynard*, 958 F.2d 1013, 1015-16 (10th Cir. 1992); *Truitt v. Hargett*, 986 F.2d 1430, No. 92-6329, 1993 WL 53577, *2 (10th Cir. Feb. 16, 1993) (unpublished).

There is, admittedly, a shallow logic at work here:  if federal law precluded review of federal claims arising from facts determined in earlier federal habeas proceedings, should not an identical state bar operate to a similar effect?  The wisps of logic dissolve when one considers the contours of the procedural default doctrine; the federal habeas rules do not inform a debate animated by an entirely different set of principles.  When a district court invoked the successive bar in Rule 9(b) and declined to entertain a federal prisoner's request for habeas relief, it did so knowing the prisoner had a fair opportunity to present his claim in federal court.  But no such assurance attends a decision declining review of a state prisoner's request for habeas relief on the ground that a *state* court decided it was previously determined.  Whether the federal claim was previously decided, as opposed to being waived, must ultimately be determined by a federal court.  The federal court must determine whether the state court's refusal to revisit the claim excuses its obligation under § 2254(a) to decide whether the petitioner is in lawful custody.[11]  *See Cone,* 556 U.S. at 465.

---

[11] If there are lessons to be drawn from the federal successive bar, they support LeBere's position on procedural default, not the State's.  The federal rule is a doctrinal relative of common law res judicata, the application of which rests on the premise that the prior determination was a decision on the merits.  *Sanders*, 373 U.S. at 16.  As the Supreme Court suggested in *Cone*, a successive bar does not sound in procedure the way claim-processing rules do.  In the Court's words, "[a] claim is procedurally barred when it has not been fairly presented to the state courts for their initial consideration—not when the claim has been presented more than once."  *Cone*, 556 U.S. at 467.

- 18 -

Given the posture of this case there is no procedural bar to habeas review. The irony has not escaped us.[12] Had the Colorado courts decided LeBere's *Brady* claim was waived or forfeited because it could have been but was not raised on direct appeal (as is clearly the case—he was aware of the pertinent facts but neither made mention of *Brady* nor fairly alluded to it), *see* Colo. R. Crim. P. 35(c)(3)(VII), federal courts would be bound to honor its procedural default holding, absent a showing of cause for the default and actual prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice.[13] *See Coleman*, 501 U.S. at 750.

Instead, the Colorado Court of Appeals concluded the *Brady* claim had been decided because it was necessarily included in the new trial motion. However, while the new trial motion was based on the same facts as the later-raised *Brady* claim, *Brady* was

---

[12] And the supreme irony may be yet to come. If the *Brady* claim had, in fact, been previously determined, explicitly or implicitly, federal habeas review would not be foreclosed if timely requested. But it would be deferential review. *See Mitchell,* 262 F.3d at 1045. On the other hand, if the Colorado Court of Appeals was incorrect in equating the test for newly discovered evidence with the test for a *Brady* violation (as appears to be the case) then the state courts failed to address the merits of the *Brady* claim. That would, seemingly, trigger de novo review by the federal courts. *Mitchell*, 262 F.3d at 1045.

[13] We have yet to decide in a published case whether Colorado's rule barring claims that could have been but were not previously raised is an independent and adequate state ground precluding federal habeas review. We have, however, indicated as much in several unpublished cases. *See, e.g., Rea v. Suthers*, 402 F. App'x 329, 331 (10th Cir. 2010) (unpublished); *Burton v. Zavaras*, 340 F. App'x 453, 454 (10th Cir. 2009) (unpublished); *Williams v. Broaddus*, 331 F. App'x 560, 563 (10th Cir. 2009) (unpublished).

not raised in the new trial motion. For starters, a *Brady* claim is grounded in the constitutional principle of due process, which is not true of a motion based on newly discovered evidence. *Compare Brady*, 373 U.S. at 87, *with Farrar v. People*, 208 P.3d 702, 706 (Colo. 2009). Additionally, impeachment evidence falls within the *Brady* rule; on the other hand, for newly discovered evidence to constitute grounds for a new trial, it must be more than impeaching. *Compare United States v. Bagley*, 473 U.S. 667, 676 (1985) *with Farrar*, 208 P.3d at 707, and *People v. Gutierrez*, 622 P.2d 547, 559-60 (Colo. 1981). Moreover, the materiality standard is comparatively more stringent under Colorado's newly discovered evidence law, especially as it relates to recantations. *Compare Bagley*, 473 U.S. at 682, *with Farrar*, 208 P.3d at 706.

**REVERSED** and **REMANDED**.