FILED
United States Court of Appeals
Tenth Circuit

June 11, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

RAY A. SMITH,

    Petitioner - Appellant,

v.

JOHN CHAPDELAINE; THE
ATTORNEY GENERAL OF THE STATE
OF COLORADO,

    Respondents - Appellees.

No. 18-1362
(D.C. No. 1:16-CV-02528-RBJ)
(D. Colo.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **BRISCOE**, **McKAY**, and **LUCERO**, Circuit Judges.
_____

Ray A. Smith, a Colorado pro se prisoner, seeks a certificate of appealability

(COA) to challenge the district court's order denying his application for 28 U.S.C. § 2254

habeas relief.  We deny a COA and dismiss this matter.

**BACKGROUND**

The Colorado Court of Appeals (CCA) summarized this case as follows:

> In January 2008, Smith spent a day drinking with his friend, Phillip
> Patterson, and another man, Jeffrey Crane.  Later that day, after Patterson
> had fallen asleep, Smith stabbed Crane to death.
>     Smith was arrested and charged with murder.  While awaiting trial,
> he made phone calls from jail.  During those calls, which were recorded, he

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

asked potential witnesses to testify untruthfully or to avoid appearing at trial. Consequently, he was charged with witness tampering.

At trial [in the Denver District Court], the prosecution entered various types of incriminating evidence, including DNA and bloodstain evidence, the testimony of various witnesses (including Patterson), Smith's own statements to police and to his girlfriend, and recordings of Smith's calls from jail. Smith testified that he and Crane had struggled over a knife. Smith said that he did not remember stabbing Crane, but he "assumed" that that had occurred.

The jury convicted Smith of first degree murder and seven counts of tampering with a witness.

R., Vol. I at 164. The trial court sentenced Smith to life without parole on the murder count, consecutive to six years' incarceration on the tampering counts. The CCA affirmed Smith's convictions.

Smith then sought state postconviction relief on a variety of theories. After those claims were rejected, he initiated the current federal habeas proceedings.

In his § 2254 application, Smith raised eight claims in the district court: (1) unlawful custodial interrogation; (2) unconstitutional state charging statute; (3) lack of specificity in the charging documents; (4) ineffective assistance of counsel during plea negotiations; (5) ineffective assistance of trial counsel; (6) ineffective assistance of appellate counsel; (7) judicial misconduct; and (8) prosecutorial misconduct. After thoroughly reviewing and considering the claims, the district court determined that many were procedurally barred and that the remainder did not warrant habeas relief. Accordingly, the district court denied Smith's application for habeas relief and declined to issue a COA.

## DISCUSSION
### I. Standards of Review

A COA is a jurisdictional prerequisite to our review. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), such "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Where the district court has denied a claim on procedural grounds, the petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

In deciding whether to grant a COA, we incorporate the deferential treatment of state court decisions required by the Antiterrorism and Effective Death Penalty Act (AEDPA). *See Davis v. McCollum*, 798 F.3d 1317, 1319 (10th Cir. 2015). Where the state courts have ruled on the merits of a petitioner's claims, he is entitled to relief under AEDPA "only if [their] decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in the light of the evidence presented in the State court proceeding." *Id.* (citation and internal quotation marks omitted). And where the state courts have declined to consider the merits of a

3

federal claim based on independent and adequate state procedural grounds, a federal

court will consider that claim barred and beyond review unless the petitioner can show

cause for the default in state court and resulting prejudice, or a fundamental miscarriage

of justice. *See Smith v. Workman*, 550 F.3d 1258, 1274 (10th Cir. 2008). Similarly,

"[a]nticipatory procedural bar occurs when the federal courts apply procedural bar to an

unexhausted claim that would be procedurally barred under state law if the petitioner

returned to state court to exhaust it." *Moore v. Schoeman*, 288 F.3d 1231, 1233 n.3

(10th Cir. 2002) (internal quotation marks omitted).

Finally, although we liberally construe Smith's pro se filings, we "cannot take on

the responsibility of serving as [his] attorney in constructing arguments and searching the

record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

## II. Custodial Interrogation (Habeas Claim 1)

On direct appeal to the CCA, Smith argued that the trial court should have

suppressed non-*Mirandized* statements he made to police the morning after Crane's

stabbing. In rejecting Smith's argument, the CCA recounted the pertinent facts as

follows:

> The morning after the stabbing, two Arvada police officers came to Smith's home. They were admitted by Smith's girlfriend. The officers woke Smith and told him that he was a potential witness to a crime in Denver.
> Officer Kristin Harris noticed that Smith had a large cut on his hand. She asked about the injury, and Smith replied that he had received it the previous day. Harris then reported the injury to the Denver Police Department and was informed that Smith was a suspect.
> The officers did not initiate further conversation with Smith. However, Smith spontaneously asked whether Patterson was okay, and he

4

> changed his story about the cut, saying that it had happened several days earlier.
>
> A short time later, Denver police officers arrived and took Smith to the police station, [where he was *Mirandized* and questioned further].

R., Vol. I at 165. The CCA found no error in the admission of Smith's non-*Mirandized* statements, as he was neither in custody nor subject to interrogation when he made them.

The federal district court concluded that the CCA's decision was not contrary to or an unreasonable application of clearly established federal law. In doing so, the district court acknowledged Smith's complaints that Officer Harris told him to not light a cigarette, that he could not move freely around the house after Denver police arrived, and that he was never told he could leave. But the district court stated that those circumstances did not turn his interaction with the Arvada police officers into a custodial interrogation requiring *Miranda* warnings.

Smith has not shown that the district court's decision is debatable. Unless and until an individual is subject to custodial interrogation, *Miranda* does not apply. *United States v. Cash*, 733 F.3d 1264, 1276 (10th Cir. 2013). "To be in custody, a person must be under formal arrest or have his freedom of action curtailed to a degree associated with formal arrest." *Id.* at 1277 (ellipsis and internal quotation marks omitted). "[I]nterrogation extends *only* to words or actions that the officers should have known were reasonably likely to elicit an incriminating response." *Id.* (internal quotation marks omitted).

Where, as here, officers question a person about the source of an injury in a non-coercive environment and without restricting his or her freedom of movement,

5

*Miranda* is generally not implicated. *See United States v. Scalf*, 725 F.2d 1272, 1276 (10th Cir. 1984). Moreover, "volunteered statements made [even] while in custody but not in response to questions posed by the police are not subject to the *Miranda* exclusionary rule." *United States v. Pettigrew*, 468 F.3d 626, 634 (10th Cir. 2006).

Smith is not entitled to a COA on this claim.

### III. Colorado's Charging Statute (Habeas Claim 2)

After the CCA affirmed his conviction and sentence, Smith returned to the state trial court, filing successive motions complaining of jurisdictional defects arising from the district attorney's office commencing prosecution in the Denver County Court. The trial court could not ascertain Smith's legal argument, and it ultimately barred him from reasserting the argument. The CCA concluded that the argument was barred with respect to Smith's conviction and that it was meritless as to his sentence.

In his federal habeas application, Smith transformed his claim into a vague federal due-process challenge to Colo. Rev. Stat. § 16-5-205(3), which requires that criminal charging documents comply with the Colorado criminal-procedure rules. The federal district court determined that this claim had not been exhausted in state court and would be barred if Smith attempted to raise it there now. *See* Colo. R. Crim. P. 35(c)(3)(VII) (providing generally that "[t]he court shall deny any claim that could have been presented in an appeal previously brought or postconviction proceeding previously brought").[1]

---

[1] This rule is both independent and adequate because it is based on Colorado law and has been applied evenhandedly by the Colorado courts. *See LeBere v. Abbott*, 732 F.3d 1224, 1233 n.13 (10th Cir. 2013) (collecting unpublished cases determining that Rule 35(c)(3)(VII) is an independent and adequate state ground precluding federal habeas

We agree that Smith's federal due-process claim is unexhausted. *See Bland v. Sirmons*, 459 F.3d 999, 1012 (10th Cir. 2006) ("[P]resentation of a somewhat similar claim is insufficient to fairly present a federal claim before the state courts . . . ."); *cf. Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994) ("Jurisdiction is no exception to the general rule that federal courts will not engage in collateral review of state court decisions based on state law . . . .").

We also agree with the district court's determination that Smith failed to surmount the resulting anticipatory procedural bar with a showing of either cause and prejudice or a miscarriage of justice. Smith cannot rely on ineffective assistance of appellate counsel as cause because such a claim must itself be exhausted, *see Edwards v. Carpenter*, 529 U.S. 446, 453 (2000), and Smith never claimed in state court that his appellate counsel was ineffective. Nor can Smith rely on a miscarriage of justice, as he has not identified new, reliable evidence of his innocence. *See Frost v. Pryor*, 749 F.3d 1212, 1231-32 (10th Cir. 2014) (explaining that the miscarriage-of-justice exception requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," and which "show[s] that it is more likely than not that no reasonable juror would have convicted the petitioner in the light of the new evidence" (internal quotation marks omitted)).

review). Smith does not address the exhaustion of his claim; instead, he revisits the substance of his claim, "assert[ing] that he was brought before a tribunal and judged unlawfully and bound over for trial so the District Attorney's Office could rush to secure a conviction." Appl. for COA at 11. "A state prisoner bears the burden of showing he has exhausted available state remedies." *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995).

We conclude that jurists of reason could not debate whether the district court correctly imposed an anticipatory procedural bar. We, therefore, deny a COA as to Claim 2.[2]

### IV. Ineffective Assistance of Trial Counsel

To make out an ineffective-assistance claim, a defendant must show that trial counsel performed deficiently, and that the deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

### A. Plea Negotiations (Habeas Claim 4)

During his postconviction appeal to the CCA, Smith claimed for the first time that he received ineffective assistance during plea negotiations because his attorney inadequately advised him about the strength of the prosecution's case. The CCA declined to consider Smith's claim presented for the first time on appeal from the denial of postconviction relief. *See People v. Osorio*, 170 P.3d 796, 801 (Colo. App. 2007) (declining to consider ineffective-assistance claim not raised in defendant's postconviction motion).

The federal district court found the claim procedurally defaulted, and it recognized its inability to consider the claim in the absence of cause for the default and actual

---

[2] The district court also applied anticipatory procedural bar to Smith's claims that his due-process rights were violated because the time of the offense was omitted from the criminal complaint and information (Habeas Claim 3); that he received ineffective assistance of appellate counsel (Habeas Claim 6); and that the state judge who presided over his trial committed misconduct (Habeas Claim 7). The district court determined, for the reasons noted above in relation to Smith's second habeas claim, that Smith could not avoid the procedural bar. Because that determination is not debatable, we deny a COA on Habeas Claims 3, 6, and 7.

prejudice, or a fundamental miscarriage of justice. In assessing cause, the district court followed the rule that a prisoner may avoid defaulting an ineffective-assistance claim if the state courts did not appoint counsel in "the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim," *Trevino v. Thaler*, 569 U.S. 413, 423 (2013), and the "prisoner [can] demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit," *Martinez v. Ryan*, 566 U.S. 1, 14 (2012).[3] The district court determined, however, that Smith's ineffective-assistance claim was not substantial.

Reasonable jurists could not debate this determination. Smith alleged he had been offered a plea agreement with a likely thirty-two year sentence. When Smith asked defense counsel whether he should accept the plea agreement and hope that the judge would instead approve a sixteen-year sentence, defense counsel allegedly responded, "I can't tell you that, you have to figure that out for yourself." R., Vol. II at 382 (brackets and internal quotation marks omitted). The district court assumed that defense counsel was deficient, but it found no resulting prejudice because Smith had also alleged that (1) the prosecutor would not agree to a sixteen-year sentence, as the trial judge would not

---

[3] The district court further correctly noted that the *Martinez*/*Trevino* rule applies if the state either (1) "requires that an ineffective assistance of trial counsel claim be raised in an initial-review collateral proceeding," *Trevino*, 569 U.S. at 423 (alterations and internal quotation marks omitted); or (2) the "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal," *id.* at 429. Colorado falls in the second category. *See Barker v. Raemisch*, 757 F. App'x 750, 753 n.2 (10th Cir. 2018) (unpublished and cited here under 10th Cir. R. 32.1(A) for its persuasive value).

approve it; and (2) he (Smith) was reluctant to accept a thirty-two year sentence.  Thus,

Smith failed to show a reasonable probability that he would have accepted the plea

agreement if properly advised by counsel.  *See Missouri v. Frye*, 566 U.S. 134, 147

(2012) (explaining that to establish prejudice on an ineffective-assistance claim where a

plea offer has lapsed or been rejected, the defendant "must demonstrate a reasonable

probability" that he would have accepted the putative plea offer and that "the plea would

have been entered without the prosecution canceling it or the trial court refusing to accept

it").

Smith is not entitled to a COA on this issue.

## B.  Trial (Habeas Claim 5)

The federal district court culled through Smith's habeas petition and identified

sixteen claims of ineffective assistance of counsel during trial:

> (a) failure to have key evidence tested for fingerprints or DNA; (b) failure
> to subpoena two critical witnesses for Mr. Smith; (c) failure to obtain video
> tape from [the] lobby of [Mr. Smith's] apartment building; (d) failure to get
> video tape from two city buses that Mr. Smith rode home [from Patterson's
> apartment]; (e) failure to have Mr. Smith's BAC tested and the BAC of a
> witness tested; (f) failure to keep two African-American ladies on the jury
> that Mr. Smith wanted; (g) failure to find or present available witnesses,
> including expert witnesses; (h) use of a very vague line of questioning and
> presenting few substantial objections for key prosecution witnesses;
> (i) failure to confirm time-lines of crucial elements and events; and
> (j) failure to present any adversarial challenge by resting without providing
> a defense as promised in opening statement; (k) failure to raise the defense
> of intoxication; (l) failure to object to the prosecutor's insistence that
> Mr. Smith demonstrate the events surrounding the crime; (m) failure to
> highlight discrepancies in the evidence tending to disprove the
> prosecution's theory of racial prejudice and jealousy; (n) failure to present
> an alibi defense; (o) failure to present a defense strategy, which compelled
> Mr. Smith to testify to try to defend himself; and (p) failure to object to the

jury handling evidence during deliberation that was not admitted into evidence.

R., Vol. I at 361.

1.     **Exhausted Ineffective-Assistance Claims**

The district court noted that only two of the claims had been fully exhausted in state court:  failing to find or present available witnesses, including expert witnesses (subclaim (g)); and providing only vague questions and limited objections to prosecution witnesses (subclaim (h)).  The CCA had summarily rejected those claims as procedurally defaulted because Smith provided only vague and/or conclusory allegations of ineffective assistance in the postconviction court.  *See Osorio*, 170 P.3d at 799 (authorizing the summary denial of an ineffective-assistance claim based on allegations that "are merely conclusory, vague, or lacking in detail").

The federal district court declined, however, to apply procedural bar, given that the CCA considered *Strickland* in determining whether Smith's allegations were sufficient.  *Cf. Smith*, 550 F.3d at 1274 ("A state procedural default is 'independent' if it relies on state law, rather than federal law.").  Thus, the district court addressed subclaims (g) and (h) on their merits, and it succinctly determined that *Strickland* had not been violated.

We conclude that a COA is not warranted.  "Our review of ineffective-assistance claims under § 2254 . . . is doubly deferential, deferring both to the state court's determination that counsel's performance was not deficient and to the attorney's decision in how to best represent a client."  *Goode v. Carpenter*, 922 F.3d 1136, 1155 (10th Cir.

11

2019) (ellipsis and internal quotation marks omitted). As the state postconviction court noted, Smith's vague claims about witnesses mostly reflected a disagreement with counsel about trial strategy. In his request for a COA, Smith offers no developed contrary argument. We therefore conclude that reasonable jurists could not debate denying habeas relief on subclaims (g) and (h).

## 2. Unexhausted Ineffective-Assistance Claims

As for Smith's fourteen other allegations of ineffective assistance, the district court separated them into two groups. In the first group, the district court noted that Smith had presented ten subclaims to the state postconviction court that he did not appeal to the CCA (subclaims (b), (d), (e), (f), (i), (j), (k), (m), (n), and (o)). These subclaims were procedurally defaulted because they were not exhausted in a full round of state review, *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004), and would be barred if Smith returned to state court to assert them, *see* Colo. R. Crim. P. 35(c)(3)(VII).

The district court further correctly pointed out that Smith could not use the *Martinez/Trevino* rule to show cause for defaulting these claims. *See Norris v. Brooks*, 794 F.3d 401, 405 (3d Cir. 2015) (observing that an ineffective-assistance claim "presented on initial collateral review and only waived on collateral appeal" is subject to the ordinary cause-and-prejudice/miscarriage-of-justice rules). These subclaims were, therefore, beyond federal habeas review for the same reasons that plagued Smith's other defaulted claims. *See supra* discussion Part III. We conclude that no reasonable jurist could debate the district court's resolution of the procedural bar applicable to these ten subclaims of ineffective assistance of trial counsel.

12

In the second group, the district court noted that subclaims (a), (c), (l), and (p) were not raised in the initial state court postconviction proceedings (or on postconviction appeal to the CCA), and thus, were amenable to the *Martinez/Trevino* rule for cause—i.e., substantiality. The district court addressed each subclaim and determined that each was meritless. We conclude that the district court's determination is not debatable for the reasons that follow.

Subclaim (a) involved defense counsel's failure to have certain evidence tested for fingerprints and DNA. The district court concluded that defense counsel's decision to not conduct such tests was a reasonable strategic choice, given that DNA evidence already tied Smith to the murder and there was a chance that further testing might reveal more incriminating evidence. *See Newmiller v. Raemisch*, 877 F.3d 1178, 1198 (10th Cir. 2017) ("Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." (brackets and internal quotation marks omitted)), *cert. denied*, 139 S. Ct. 59 (2018).

Additionally, even assuming that counsel performed deficiently, the district court concluded that Smith was not prejudiced, given the overwhelming evidence of his guilt. Indeed, the evidence showed that Crane was stabbed multiple times; Crane's DNA was found on Smith's shirt; Smith's DNA was found on the murder weapon and on Crane; Smith's blood was found in Peterson's sink and apartment stairwell and at the nearby bus stop; and Smith admitted the stabbing to his girlfriend and later called her from jail, telling her not to reveal his confession. Reasonable jurists could not debate the district court's resolution of subclaim (a).

13

In subclaim (c), Smith complained that defense counsel failed to obtain a video tape from the lobby of his apartment, which would have shown Smith returning home and not leaving again. The district court determined that even if such video existed and defense counsel should have retrieved it, Smith was not prejudiced because of the overwhelming evidence of his guilt. Reasonable jurists could not debate the merits of this subclaim.

In subclaim (l), Smith asserted that defense counsel was ineffective by not objecting to the prosecutor's use of Smith in demonstrations while Smith was being cross-examined. The district court rejected this claim by noting that defense counsel in fact objected. And again the district court referenced Smith's failure to show prejudice due to the overwhelming evidence of his guilt. The district court's resolution of this subclaim is not debatable.

Finally, subclaim (p) involved defense counsel's failure to object to the jury's handling of a knife. Smith alleged that counsel was ineffective because the knife had not been admitted into evidence. The district court aptly found the claim meritless because the knife was in fact admitted into evidence and because Smith failed to show prejudice.

As Smith failed to show that subclaims (a), (c), (l), or (p) were substantial, the district court applied procedural bar. We conclude that no reasonable jurist could debate that application of procedural bar.

Smith is not entitled to a COA on any of his unexhausted subclaims of ineffective assistance of trial counsel.

## V. Prosecutorial Misconduct (Habeas Claim 8)

In a state postconviction motion, Smith claimed that the prosecutor committed misconduct by "1) repeated[ly] us[ing] . . . the term 'lie' and its iterations; 2) making false and inflammatory comments in closing arguments; and 3) fail[ing] to provide a theory of defense instruction." R., Vol. II at 62. The postconviction court found that the claims were barred because they could have been raised on direct appeal. The CCA agreed.

The federal district court found the claims procedurally defaulted, and it concluded that Smith failed to show cause for the default and actual prejudice or a fundamental miscarriage of justice. *See supra* discussion Part III.

We conclude that Smith is not entitled to a COA on this claim because the district court's application of procedural bar is not debatable.

### CONCLUSION

We deny Smith's application for a COA, and we dismiss this matter. Smith's application for in forma pauperis status is granted.

Entered for the Court

Mary Beck Briscoe
Circuit Judge