# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-2810

_____

| | | |
|---|---|---|
| Kevin Lamont Evans, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Kelly Lock, Superintendent; Jeremiah | * | Western District of Missouri. |
| (Jay) Nixon, Attorney General of the | * | |
| State of Missouri, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  September 15, 1999

Filed:  October 8, 1999

_____

Before BOWMAN, LAY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Kevin L. Evans, a prisoner in the custody of the State of Missouri pursuant to a conviction for second degree robbery, appeals from an order of the District Court[1] denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254.  See Evans v. Lock, No. 97-1005 (W.D. Mo. June 19, 1998).  Evans claims that the District Court

_____

[1] The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

erred in failing to rule that the state trial court violated his due process rights by allowing the admission of certain identification testimony Evans argues was tainted. We do not reach the merits of Evans's constitutional claim. Instead, we conclude that any error was harmless given the overwhelming evidence of guilt. We affirm.

We begin with the facts of the crime for which Evans was convicted, as presented in the record. Evans entered a Burger King restaurant shortly before closing time on December 21, 1992, and approached the counter. At the counter, Evans asked Julie Boucher, the cashier, for an employment application. After seeking and receiving permission from Elizabeth Cass, a senior assistant manager, Boucher complied with Evans's request. Both Cass and Boucher observed Evans take the employment application to a nearby booth.

Shortly thereafter, Evans returned to the counter and handed Boucher a note reading: "Play for change. Just empty the register and no one will get hurt!" Boucher stared at Evans for a minute before realizing that she was being robbed. She then opened the cash register and gave Evans all of the money it contained, a total of $72.00. Evans wished Boucher a "Merry Christmas" and fled. In total, Evans was in the restaurant for seven to ten minutes.

After Evans's departure, the employees found a partly-completed employment application on the counter, near the cash register. The beginning of the defendant's name, "Kevin L.," was written on the employment application. The police identified Evans's fingerprints on the employment application. Cass and Boucher both testified at trial that Evans was the only person to whom they had given an employment application that day. Cass and Boucher also both testified that before Evans entered the restaurant, they had cleared the restaurant of all debris and papers as part of their standard practice in closing for the day. In particular, they testified that no employment applications were laying on the counter when Evans entered the restaurant. From the time he entered the restaurant until the time he fled, Evans was the only customer in the

restaurant. Given all of the testimony and physical evidence with regard to the employment application, it is not surprising that in closing argument the prosecution told the jury that it considered the employment application to be the "linchpin" of its case.

The police arrived a short while after the robbery and, soon after obtaining a description of the assailant, showed Boucher and Cass a photographic lineup of potential suspects.[2] It included a poor quality photograph of Evans that had been taken several days earlier in unrelated circumstances. Cass, the senior assistant manager who saw Evans enter the restaurant and leave the counter with the employment application, selected Evans's picture stating that "it could probably be him." Cass also positively identified Evans at trial.[3] Boucher, who testified that she was quite upset at the time, was unable to identify Evans from this photographic lineup. Subsequently, at the preliminary hearing and at trial, Boucher identified Evans as the robber.

In total, the prosecution presented six witnesses at trial – including Cass and Boucher, both of whom identified Evans as the assailant – as well as the employment application bearing Evans's fingerprints and name. Evans's attorney cross-examined all of the witnesses and presented a defense of mistaken identity. After hearing the evidence and argument, the jury found Evans guilty of robbery. The trial court denied Evans's motion for a new trial and sentenced him to twelve years in prison as a prior and persistent offender. Evans appealed his conviction, and it was upheld by the Missouri Court of Appeals. See State v. Evans, 936 S.W.2d 893 (Mo. Ct. App. 1997).

Evans challenges Boucher's identification testimony as tainted and unreliable. Evans points out that before Boucher entered the preliminary hearing room, a police officer told her that the accused assailant would be in the hearing room. Evans argues

---

[2] Evans does not challenge the constitutionality of this photographic lineup.

[3] Evans does not claim that Cass's identification testimony was tainted.

that this statement and the other circumstances of the preliminary hearing were highly suggestive – Evans, as it turned out, was the accused assailant and, as might be expected, was seated at the defense table during his own hearing; he, along with three others in the room (one of whom shared Evans's race), was dressed in orange prison garb. Evans claims that Boucher's identification testimony was tainted irretrievably from this moment forward.

As an initial matter, we note that Evans, who was represented by counsel, failed to preserve this claim at trial by objecting to the admission of Boucher's testimony. Evans did, however, raise his claim on direct appeal to the Missouri Court of Appeals, which reviewed for plain error and found none. See State v. Evans, No. WD 49602, mem. supplemental order at 6 (Mo. Ct. App. Jan. 21, 1997). We have noted the difficulty of procedural bar analysis in such circumstances. See Sweet v. Delo, 125 F.3d 1144, 1152 (8th Cir. 1997) (collecting cases), cert. denied, 118 S. Ct. 1197 (1998). We also note that discerning the proper standard for habeas review under the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") is relatively uncharted territory. But see James v. Bowersox, ___ F.3d ___, No. 98-2841, 1999 WL 638505, at *2 (8th Cir. Aug. 19, 1999) (noting "exceptionally limited" scope of habeas court's review of trial court error – here, alleged prosecutorial misconduct – given strict due process standard of constitutional review, deferential review mandated by AEDPA, and habeas court's less reliable vantage point for gauging impact of alleged violation on overall trial fairness).

Accordingly, because we conclude that any error with respect to the inclusion of Boucher's testimony was harmless, we see no reason to belabor these issues or to reach the constitutionality of the circumstances surrounding Boucher's identification of Evans. Cf. 28 U.S.C. § 2254(b)(2) (permitting federal court to deny habeas petition on merits notwithstanding applicant's failure to exhaust state remedies); Lambrix v. Singletary, 520 U.S. 518, 525 (1997) ("We do not mean to suggest that the procedural bar issue must invariably be resolved first [given constraints of judicial economy.]");

Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir.) (en banc) ("Although the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated."), cert. denied, ___ U.S.L.W. ___ (U.S. Oct. 4, 1999) (No. 98-9681).

In general, a habeas court will apply the harmless error standard of Kotteakos v. United States, 328 U.S. 750 (1946), under which constitutional error requires reversal only if the error had a "substantial and injurious effect or influence in determining the jury's verdict," id. at 776. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). Nevertheless, this Circuit applies the stricter standard of Chapman v. California, 386 U.S. 18 (1967), in the context of habeas review when a state court has not conducted its own harmless error analysis on direct appeal. See Beets v. Iowa Dep't of Corrections Svcs., 164 F.3d 1131, 1134-35 n.3 (8th Cir.), cert. denied, ___ U.S.L.W. ___ (U.S. Oct. 4, 1999) (No. 98-8551); see also Brecht, 507 U.S. at 636-37 (where direct review in state court had already found trial court error to be harmless beyond a reasonable doubt under Chapman, federal habeas review properly limited to "less onerous" Kotteakos standard). Here, the Missouri Court of Appeals reviewed for plain error and did not conduct any express harmless error analysis. Accordingly, we will apply the Chapman standard as set forth below.[4]

The Supreme Court has "repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986) (citing Chapman, 386 U.S. at 25). In applying this standard, a reviewing habeas court must gauge whether

_____

[4] Because we conclude that any error here could survive even the strict Chapman harmless error standard, we do not consider whether, under AEDPA, a less stringent standard would apply where, as here, the state court did not expressly review for harmless error.

any constitutional error could reasonably influence the jury in a manner adverse to the defendant, given the record as a whole. See Lam v. Iowa, 860 F.2d 873, 876 (8th Cir. 1988) (citing Chapman, 386 U.S. at 23-24), cert. denied, 490 U.S. 1069 (1989). "[T]his impermissible influence might appear in either of two forms: the evidence might aid the state in proving its case beyond a reasonable doubt, or it might unfairly influence or prejudice the jury." Id.

Here, even assuming arguendo that the admission of Boucher's identification testimony constitutes constitutional error, given the overwhelming evidence of Evans's guilt on the record as a whole, we hold that the inclusion of Boucher's testimony was, at most, harmless error.

The following evidence in the trial record would have amply proved the State's case beyond a reasonable doubt even without Boucher's identification testimony: Cass, the assistant manager, whose testimony is not challenged as being tainted, testified that she saw Evans take an employment application shortly before the robbery; Cass testified that Evans was the only person who had been given an employment application that day and that no employment applications were on the counter before Evans arrived; an employment application bearing Evans's fingerprints and name was found near the cash register immediately following the robbery; Cass identified Evans as the robber both at a photographic lineup shortly after the robbery and at trial. Accordingly, the question of guilt or innocence is not a close one here. Indeed, Boucher's identification testimony was cumulative of Cass's unchallenged identification testimony. Considering the State's overwhelming case against Evans, we are thoroughly convinced that the trial jury, unaided by Boucher's testimony, would have found Evans guilty as charged. We do not see any indication that Boucher's testimony, even if constitutionally infirm (a question we need not and do not decide), impermissibly prejudiced the jury. In these circumstances, any influence this testimony may have had upon the jury is constitutionally insignificant.

If an alleged error was harmless beyond a reasonable doubt, the conviction should be affirmed irrespective of that error. Accordingly, even assuming, without deciding, that admitting Boucher's testimony constituted constitutional error, given the harmless nature of any such error in the context of this case, we affirm the District Court's denial of habeas relief.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.