**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 18 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JACKIE LYNN MARTIN,

    Defendant-Appellant.

No. 98-5066

(D.C. No. 97-CR-4-H)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **McKAY**, and **BRORBY**, Circuit Judges.

Defendant Jackie Lynn Martin was indicted on one count of armed bank robbery in violation of 18 U.S.C. § 2113(a) & (d); three counts of interference with commerce by threats or violence in violation of 18 U.S.C. § 1951; two counts of using a firearm during commission of a crime of violence in violation of 18 U.S.C. § 924(c), and two counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). A jury convicted Defendant on all eight counts of the indictment, and the district court sentenced him to fifty years imprisonment.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant appeals his convictions and sentence. Defendant claims (1) the district court improperly denied his motion to suppress identification evidence based on unduly suggestive procedures, (2) the Government improperly charged him with two counts of possessing a firearm under § 922(g) based on one continuous uninterrupted possession of the same firearm, and (3) the district court improperly denied his request to represent himself at sentencing. Our jurisdiction arises under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. We discuss the facts only as necessary to our analysis of the issues raised. We affirm in part, vacate in part, and remand for further proceedings.

I.

The indictment against Defendant arose from the robberies of four Tulsa, Oklahoma businesses over a five-day period in December 1996–the robbery of a dry cleaning business on December 17, the robbery of a grocery store on December 19, the robbery of a gas station on December 19, and the robbery of a bank on December 21. The Tulsa police apprehended Defendant on December 31, 1996. During a lineup on January 6, 1997, three witnesses identified Defendant as the man who committed the robberies. Rodney Cleavelin, the owner of the dry cleaning business; Josh Davis, an employee of the grocery store; and Thelma Lantz, a sales clerk at the gas station, each identified Defendant. A few days prior to the lineup, both Cleavelin and Davis had tentatively identified Defendant in a photo array. A grand jury subsequently indicted Defendant. All three witnesses, along with Terri Hunter, a bank customer at the time of the bank robbery,

2

identified Defendant at trial.

Defendant moved to suppress all evidence of Cleavelin's and Davis' identifications, contending that a newspaper article appearing in the Tulsa World three days prior to the police lineup, but following the photo array, tainted the witnesses' identifications in violation of his due process rights. The article named Defendant as a suspect in the robberies, described him by weight, height, and hair color, and included his picture. The district court denied Defendant's motion. Because Defendant "failed to establish a nexus between the photograph and the article and the subsequent line-up procedure," the court held Defendant had "not met his burden of proving that the procedure employed was impermissibly suggestive." We review de novo the ultimate question of whether identification procedures and testimony violated due process. Grubbs v. Hannigan, 982 F.2d 1483, 1489 n.5 (10th Cir. 1993).

A defendant has the initial burden of proving that an identification procedure was impermissibly suggestive. See United States v. Wade, 388 U.S. 218, 240 n.31 (1967). If defendant meets this burden, the burden shifts to the Government to prove by clear and convincing evidence that the identification was reliable independent of the suggestive procedure. See id. at 240. "Even if an identification procedure is suggestive, the introduction of the identification evidence does not necessarily violate a defendant's due process rights. The central inquiry is whether under the totality of the circumstances the identification was reliable." Archuleta v. Kerby, 864 F.2d 709, 711 (10th Cir. 1989)

3

(internal citations and quotations omitted).

The Supreme Court has set forth five factors for lower courts to consider when evaluating the reliability of identification procedures: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 199-200 (1972). The court must balance these factors against the "corruptive effect" of the identification procedures to determine whether the identification testimony should be suppressed. Manson v. Brathwaite, 432 U.S. 98, 114 (1977). Assuming without deciding that Defendant met his initial burden of showing the lineup was impermissibly suggestive as a result of the newspaper article, we conclude that the identification procedure did not create a "very substantial likelihood of . . . misidentification." Neil, 409 U.S. at 198. In other words, the witnesses' respective identifications of Defendant were reliable considering the totality of the circumstances.

Rodney Cleavelin, owner of the dry cleaning business, testified that he had not seen the article at the time he identified Defendant from the lineup. Cleavelin, however, had discussed the article with one of his employees and had heard some of his customers mention the article. Cleavelin could not remember the specifics of the conversations. Prior to publication of the newspaper article, Cleavelin had tentatively identified

4

Defendant from a police photo array.[1]  Cleavelin indicated at that time he was 75%

certain that Defendant was the robber.  At trial, Cleavelin testified that after his business

had closed for the evening, Defendant knocked on the front glass window.  Defendant

wore a blue pullover sweatshirt with the hood drawn over his head.  Cleavelin originally

described Defendant as balding, but attributed his misdescription to the fact that

Defendant's hair was grey and in disarray at the time of the robbery.  Defendant informed

Cleavelin that he needed his pants for work the next day.  Cleavelin let Defendant inside

and directed him to remove his hood.  Defendant removed his hood and pulled a gun.  At

that point, Defendant robbed Cleavelin.  Cleavelin stated he had a good opportunity to

view Defendant in well-lit conditions.  Cleavelin further testified he was certain beyond

a reasonable doubt that Defendant was the robber.

Josh Davis, the grocery store employee, stated he had seen and read the

newspaper article prior to identifying Defendant in the lineup.  Davis further stated that

his identification of Defendant at the lineup was based on his recollection of the man he

---

[1]  The pictures in the array were "booking photos" of six men.  Each photo revealed an identification number and date.  The remaining information on the photos had been redacted.  The date on Defendant's photo was 2-27-96.  The respective dates on the other photos were 9-6-95, 3-9-95, 10-27-92, 10-9-92, and 11-17-91.  Defendant claims the dates on the photos made the array impermissibly suggestive because the robberies occurred in 1996 and the only photo with a 1996 date was his own.  Because the robberies occurred in December 1996 and Defendant's photo shows a date of February 1996, ten months earlier, we find nothing suggestive about the photos' dates. We do note, however, that such information is easily redacted and should be to avoid any appearance of impropriety.

5

saw during the robbery, not on the article and photo in the newspaper. Davis noticed the defined wrinkles on the robber's face which stuck in his mind. Davis, however, originally misdescribed Defendant as dark complected but not black. Like the other robberies, Davis noted the robber wore a blue hooded sweatshirt wrapped tightly around his face and displayed a gun. Perhaps most importantly, Davis had identified Defendant in the photo array of six men with similar appearance prior to the article's publication. At trial, Davis testified he was 99% sure that Defendant was the robber.

Given the totality of these circumstances, we do not believe the newspaper article, although poorly timed, created a likelihood of Defendant's misidentification. The indicia of independent reliability reflected in the record overcome any suggestiveness of the identification procedures. The only witness identification subject to serious attack was that of Josh Davis, the grocery story employee. The evidence surrounding Cleavelin's and Davis' identification of Defendant however, establishes no "substantial likelihood" of misidentification. Neil, 409 U.S. at 198.

In any event, any error in admitting Davis' identification testimony was harmless beyond a reasonable doubt. See Evans v. Lock, 193 F.3d 1000, 1002-03 (8th Cir. 1999) (improper identification testimony subject to harmless error analysis); United States v. Ciak, 102 F.3d 38, 42-43 (2d Cir. 1996) (same); United States v. Watkins, 741 F.2d 692, 695-96 (5th Cir. 1984) (same); Marshall v. United States, 436 F.2d 155, 158-61 (D.C. Cir. 1970) (same). See generally Neder v. United States, 527 U.S. 1 (1999) (discussing

6

harmless error analysis in context of constitutional error).

Thelma Lantz, the sales clerk at the gasoline station, indicated she had not seen the article at the time she identified Defendant from the lineup. Lantz identified Defendant after hearing each man repeat phrases the robber stated to her during the robbery. Accordingly, the article in no way tainted Lantz identification of Defendant at the lineup. At trial, she testified that Defendant entered the station wearing a jacket with the hood drawn tightly around his face showing his mouth and nose.

Terri Hunter, the bank customer, did not participate in the photo array or lineup. At trial, however, she positively identified Defendant as the bank robber. She stated that Defendant wore a blue hooded sweatshirt tied tightly around his head and fled in a light colored Ford Taurus. Witnesses to the grocery store and gas station robberies also testified that Defendant fled in a Ford Taurus. Shortly after the bank robbery, police officers located the Ford Taurus in a K-Mart parking lot. A friend of Defendant's testified that he picked Defendant up at the K-Mart the same day.

In each of the four robberies, Defendant wore a hooded sweatshirt or jacket drawn tightly around his face and wielded a gun. His method of operation was the same in each robbery. The robberies occurred in close proximity. In the grocery store, gas station, and bank robberies, Defendant was seen fleeing in a light colored Ford Taurus. Perhaps most importantly, during commission of the grocery store robbery which Josh Davis witnessed, the robber smashed a glass window causing him to bleed. DNA taken from blood drops

at the scene matched the DNA in Defendant's blood.  Similarly, DNA taken from blood stains on a jacket located in the Ford Taurus matched the DNA in Defendant's blood. Accordingly, the identification procedures and testimony in this case did not violate Defendant's due process rights despite Davis' having seen the newspaper article prior to identifying Defendant in the lineup.

II.

Defendant next contends for the first time on appeal that his continuous and uninterrupted possession of a single firearm constitutes only one offense under 18 U.S.C. § 922(g), and thus his multiple convictions under § 922(g) constitute plain error.  See Fed. R. Crim. P. 52(b).  The Government charged Defendant with two separate violations of § 922(g).[2]  Count three of the indictment charged Defendant with unlawfully possessing a firearm, a 9 mm Jennings, Model 59, Serial No. 753014, on December 17, 1996, the date of the dry cleaning robbery.  Count six of the indictment charged Defendant with unlawfully possessing the same firearm on December 19, 1996, the date of the grocery store robbery.

The Government concedes that Defendant is guilty of only one violation of

---

[2]  18 U.S.C. § 922(g) provides in relevant part:

> (g)  It shall be unlawful for any person–
>     (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
>                            . . .
> to . . . possess in or affecting commerce, any firearm . . . .

§ 922(g), and thus his multiple § 922(g) convictions cannot stand.  See United States v. Horodner, 993 F.2d 191, 193-94 (9th Cir. 1993) (uninterrupted possession of handgun spanning separate dates constitutes only one § 922(g) offense); United States v. Jones, 533 F.2d 1387, 1389-92 (6th Cir. 1976) (same); cf. United States v. McIntosh, 124 F.3d 1330, 1336 (10th Cir. 1997) (criminal counts based upon same criminal behavior are improper because they allow multiple punishments for a single criminal offense; imposition of multiple sentences for same criminal behavior constitutes plain error). Accordingly, Defendant's conviction and sentence on the second § 922(g) charge, i.e., count six of the indictment, are vacated.

### III.

Defendant lastly contends that the district court abused its discretion when it refused to recognize his constitutional right to self representation at sentencing.  See United States v. Callwood, 66 F.3d 1110, 1113 (10th Cir. 1995) (denial of right to self representation reviewed for an abuse of discretion).  A criminal defendant has a right under the Sixth Amendment to waive counsel and represent himself so long as he does so clearly and unequivocally in a knowing, intelligent, and timely manner.  See Faretta v. California, 422 U.S. 806, 835 (1975) (a defendant "should be made aware of the dangers and disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with open eyes.") (internal quotations omitted).

At his initial sentencing hearing, Defendant informed the court when given an opportunity to speak that he wished to dismiss defense counsel and proceed pro se: "I would like to, if the Court would please, to dismiss my counsel at this time and proceed pro se." While the district court permitted Defendant to explain his dissatisfaction with defense counsel at length, the court never expressly ruled on Defendant's request to proceed pro se. Instead, the court sentenced Defendant to life imprisonment.

On remand,[3] Defendant again asked to dismiss defense counsel at the outset of the sentencing hearing. When the district court asked if Defendant had any objection to the presentence investigation report, Defendant responded: "I would like to object to it because I'm trying to get Mr. Hughes [defense counsel] released off my case, as I have stated numerous times." At least three additional times prior to sentencing, Defendant expressed a desire to dismiss defense counsel. Never did the district court expressly rule on Defendant's repeated requests. Instead, the court sentenced Defendant to fifty years imprisonment.

Based upon the record before us, we conclude that Defendant at resentencing

---

[3] On June 13, 1997, the district court initially sentenced Defendant to seven life sentences on counts one and three through eight of the indictment, plus five years imprisonment on count two. The court enhanced Defendant's sentences pursuant to 18 U.S.C. § 3559(c). We subsequently dismissed Defendant's original appeal and remanded to the district court for a decision on Defendant's timely motion to correct sentence under Fed. R. Crim. P. 35(c). United States v. Martin, No. 97-5117, 1998 WL 39229 at *1 (10th Cir. 1998) (unpublished decision). On remand, the district court sentenced Defendant to fifty years imprisonment.

asserted his desire to dismiss defense counsel and represent himself in a clear, unequivocal, and timely manner. Once Defendant made his request to the district court, the court should have inquired into whether Defendant's requested waiver of counsel at sentencing was knowing and intelligent. See United States v. McKinley, 58 F.3d 1475, 1481 (10th Cir. 1995). The district court, however, never addressed Defendant's competency to waive his right to counsel. See Godinez v. Moran, 509 U.S. 389, 399 (1993) ("[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself.") (emphasis in original). Accordingly, we remand this matter to the district court for a hearing on Defendant's competency to waive his right to counsel at sentencing, and for possible resentencing if the district court finds Defendant competent to waive that right.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge

11