**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 12, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

IVAN STAMPS,

        Petitioner - Appellant,

v.

MICHAEL MILLER,

        Respondent - Appellee.

No. 18-1393
(D.C. No. 1:17-CV-01672-RM)
(D. Colorado)

**ORDER DENYING**
**CERTIFICATE OF APPEALABILITY**[*]

Before **LUCERO**, **HARTZ**, and **McHUGH**, Circuit Judges.

Ivan Stamps, a Colorado state prisoner acting pro se,[1] seeks a certificate of

appealability ("COA") in order to challenge the district court's denial of his petition for

relief under 28 U.S.C. § 2254 ("§ 2254 petition"). Exercising our jurisdiction under 28

U.S.C. § 1291, we deny Mr. Stamps's application for a COA.

---

[*]This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and 10th Circuit Rule 32.1.

[1] Because Mr. Stamps is appearing pro se, we liberally construe his pleadings. *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994). "[T]his rule of liberal construction stops, however, at the point at which we begin to serve as his advocate." *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).

## I.    BACKGROUND

The State of Colorado charged Mr. Stamps with four counts of aggravated robbery, one count of attempted robbery, two counts of second-degree assault on a peace officer, one count of attempted second-degree assault on a peace officer, and one count of criminal impersonation. After a trial at which Mr. Stamps represented himself, a jury convicted him as charged, and the court sentenced him to 292 years in prison.

Mr. Stamps appealed to the Colorado Court of Appeals ("CCA"). His appeal raised the following issues: (1) eyewitness identification testimony admitted at trial should have been suppressed as the fruit of an unduly suggestive showup;[2] (2) the evidence was insufficient to support certain of his convictions; (3) the trial court should have instructed the jury on abandonment as an affirmative defense to attempted robbery; (4) certain photographs should have been suppressed for, among other reasons, being unfairly prejudicial; (5) prosecutorial misconduct warranted reversal; (6) the trial court should not have permitted the refiling of three aggravated robbery charges previously dismissed; (7) the criminal information failed to confer jurisdiction; and (8) outrageous governmental conduct warranted reversal. The CCA affirmed the judgment of the trial

---

[2] "A 'showup' is a procedure where a single individual is exhibited to a witness and the witness is asked whether she can identify the individual as the perpetrator of the crime being investigated." *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1263 n.2 (8th Cir. 1996); *see also United States v. Wade*, 388 U.S. 218, 229 (1967) ("The pretrial confrontation for purpose of identification may take the form of a lineup, also known as an 'identification parade' or 'showup,' as in the present case . . . ."). Here, shortly after apprehending Mr. Stamps, the police drove him to the eyewitnesses, took him out of an unmarked police car, and asked the witnesses whether he was the perpetrator.

court on all counts and denied Mr. Stamps's appeal. Mr. Stamps later petitioned the

Colorado Supreme Court ("CSC") for a writ of certiorari which was also denied.[3]

Mr. Stamps then filed a § 2254 petition in the United States District Court for the

District of Colorado, raising the following four claims:

1. Whether prosecution acquired jurisdiction of the court through use of a fraudulent verification affidavit;
2. Whether the concerted action by three different government agencies to produce a fraudulent affidavit rises to the level of outrageous government conduct;
3. Whether the trial court should have permitted the refiling of charges that were previously dismissed (counts seven, eight, and nine); and
4. Whether eyewitness identifications of the defendant should have been suppressed as the fruit of an unduly suggestive identification procedure, and whether the trial and appeal courts failed to apply the *Niel v. Biggers* identification test in an objectively unreasonable manner. ROA at 523–531.

Upon initial consideration of Mr. Stamps's claims and the relevant standards

applicable to a § 2254 petition under the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA"), the district court determined that Mr. Stamps had not exhausted

Claims One and Three in state court and that those unexhausted claims were procedurally

barred from federal habeas review. The district court then directed the State of Colorado

to file an answer addressing the merits of the exhausted claims, Two and Four.[4] After

---

[3] Though Mr. Stamps only raised two issues in his petition for certiorari, Colorado Appellate Rule 51.1 "permits state prisoners to exhaust all available state remedies without seeking discretionary relief from the CSC." *Ellis v. Raemisch*, 872 F.3d 1064, 1077 (10th Cir. 2017).

[4] Ordinarily, when faced with a "mixed petition"—one containing both exhausted and unexhausted claims—a district court must "either (1) dismiss the entire petition without prejudice in order to permit exhaustion of state remedies, or (2) deny the entire petition on the merits." *Wood v. McCollum*, 833 F.3d 1272, 1273 (10th Cir. 2016) (internal quotation marks omitted). When the unexhausted claims would be procedurally

3

receiving the state's answer and a reply from Mr. Stamps, the district court concluded that Claims Two and Four lacked merit and the court dismissed the remainder of Mr. Stamps's § 2254 petition and further denied a COA.

Mr. Stamps timely filed with this court a combined application for a COA and opening brief challenging the district court's denial of his § 2254 petition.

## II.    CERTIFICATE OF APPEALABILITY

To appeal the district court's denial of his § 2254 petition, Mr. Stamps must first obtain a COA, which is available only if Mr. Stamps can establish "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Making this showing requires Mr. Stamps to demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, the district court concluded Mr. Stamps had failed to meet his burden and denied him a COA.

The standard for our review of the district court's decision varies, depending on the grounds for its denial of the § 2254 petition. When the district court has disposed of a claim on procedural grounds, such as failure to exhaust, we will issue a COA only when the petitioner meets a two-part standard, showing both that "jurists of reason would find

---

barred in state court, however, the court may properly deem the unexhausted claims to be barred from federal habeas review and address the exhausted claims. *Harris v. Champion*, 48 F.3d 1127, 1131 n.3 (10th Cir. 1995).

it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 478; *see Coppage v. McKune*, 534 F.3d 1279, 1281 (10th Cir. 2008) ("If the application was denied on procedural grounds, the applicant faces a double hurdle.").

When the district court has rejected constitutional claims on the merits, however, the petition must demonstrate only "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. To satisfy this standard, Mr. Stamps need not show that some jurists would grant his § 2254 petition; he need only prove "something more than the absence of frivolity or the existence of mere good faith." *Miller-El*, 537 U.S. at 338 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

In his application to this court, Mr. Stamps raises the same four claims he presented to the district court, two of which the district court disposed of on procedural grounds and two of which it rejected on the merits.[5] We address the claims in Mr. Stamps's petition in the order addressed by the district court, considering its procedural rulings first before turning to the claims decided on the merits.

## A. *District Court's Procedural Rulings*

To successfully challenge a state conviction, a § 2254 petitioner must demonstrate either that he has exhausted all available remedies in state court or that "there is an

---

[5] Although Mr. Stamps has renumbered his claims in his opening brief and application for a COA, we will refer to the claims as numbered in his § 2254 petition.

absence of available State corrective process" or "circumstances exist that render such process ineffective to protect" his rights. 28 U.S.C. § 2254(b)(1).[6]

In general, a petitioner's federal constitutional claim "has been exhausted when it has been 'fairly presented' to the state court." *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006). Although a petitioner need not cite "book and verse on the federal constitution," *id.* (internal quotation marks omitted), he or she should "include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle [him or her] to relief." *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996). "[T]he crucial inquiry is whether the substance of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim." *Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012) (internal quotation marks omitted).

When a petition contains unexhausted claims, a federal court may apply an "anticipatory procedural bar" to those claims if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991)). This anticipatory bar will preclude a claim from federal habeas review if the claim has "been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner

---

[6] Mr. Stamps does not argue either "absence of available State corrective process" or that "circumstances exist that render such process ineffective." 28 U.S.C. § 2254(b)(1)(i), (ii). Accordingly, he must have exhausted all available state-court remedies to challenge his conviction on federal habeas.

can demonstrate cause and prejudice or a fundamental miscarriage of justice." *Anderson v. Sirmons*, 476 F.3d 1131, 1140 (2007) (internal quotation marks omitted).

To demonstrate cause and prejudice, a petitioner must show that "some objective factor external to the defense impeded . . . his efforts to comply with the state procedural rules," *Coronado v. Ward*, 517 F.3d 1212, 1215 (10th Cir. 2008) (internal quotation marks omitted), and "actual prejudice as a result of the alleged violation of federal law," *Byrd v. Workman,* 645 F.3d 1159, 1167 (10th Cir. 2011). The fundamental miscarriage of justice exception will excuse failure to exhaust only when "a constitutional violation has probably resulted in the conviction of one who is *actually innocent*." *Selsor v. Kaiser*, 22 F.3d 1029, 1034 (10th Cir. 1994).

The district court determined that Mr. Stamps failed to exhaust Claims One and Three because he did not "fairly present" them to the state court. Because the state court would now find them procedurally barred, and because Mr. Stamps could show neither cause and prejudice nor a fundamental miscarriage of justice, the district court further concluded that Claims One and Three were subject to an anticipatory procedural bar and precluded from federal habeas review.

After careful consideration of the district court's order and the record on appeal, we conclude that jurists of reason would not find it debatable that the district court correctly disposed of Claim One on procedural grounds. And although we conclude that jurists of reason would find it debatable that the district court correctly disposed of Claim Three on procedural grounds, they would not find it debatable that Mr. Stamps's petition does not state a valid claim of the denial of a constitutional right with respect to Claim

7

Three. Accordingly, we deny Mr. Stamps's request for a COA on Claims One and Three for the reasons set forth below.

### 1. Claim One—Fraudulent Affidavit

In Claim One of his petition, Mr. Stamps asserts that the Colorado state court acquired jurisdiction over him through an allegedly fraudulent affidavit, submitted by the prosecution, in which a detective swore to the accuracy of statements contained in Mr. Stamps's charging document, a criminal information. The CCA held jurisdiction was proper, despite any defect in the affidavit, because "it is well settled in Colorado that a defect in the affidavit verifying the information does not deprive the court of subject matter jurisdiction." ROA at 343.

The district court determined that Mr. Stamps failed to exhaust Claim One because he relied only on state law when addressing this claim in his opening brief to the CCA. Accordingly, the district court found Mr. Stamps failed to allege a violation of federal law with respect to Claim One on direct appeal. And because Colo. R. Crim. P. 35(c)(3)(VII) bars Mr. Stamps from returning to state court to exhaust this claim, he is procedurally barred from seeking federal habeas review.

Jurists of reason would not find this procedural ruling debatable. Mr. Stamps's opening brief to the CCA relies exclusively on state law to mount a jurisdictional challenge to his conviction. Nowhere with respect to Claim One does this brief include reference to a "specific federal constitutional guarantee," *Gray*, 518 U.S. at 162–63, and therefore the brief did not put the state court on notice of a federal constitutional claim. *Prendergast*, 699 F.3d at 1184. Although the brief seeks broad relief in the form of

8

reversal of his convictions and dismissal of the case, citing the Fourteenth Amendment, "it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Gray*, 518 U.S. at 163.

Mr. Stamps may not now repackage the state jurisdictional challenge he made before the CCA as a federal due process challenge to obtain federal habeas relief. *See Bland*, 459 F.3d at 1012 ("[P]resentation of a 'somewhat similar' claim is insufficient to 'fairly present' a federal claim before the state courts."). His argument that the improperly verified information failed to confer jurisdiction on the state court depends on an alleged deviation from the requirements of state law, not the federal constitution. *See Scott v. People*, 490 P.2d 1295, 1298 (Colo. 1971) ("Verification of an information is required by statute."); *see also Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir.1994) ("Jurisdiction is no exception to the general rule that federal courts will not engage in collateral review of state court decisions based on state law . . . ."); *Chandler v. Armontrout*, 940 F.2d 363, 366 (8th Cir.1991) ("The adequacy of an information is primarily a question of state law and we are bound by a state court's conclusion respecting jurisdiction . . . . This determination of jurisdiction is binding on this [federal] court."); *Hernandez v. Ylst*, 930 F.2d 714, 719 (9th Cir.1991) ("We are not persuaded that a constitutional violation necessarily occurs when the convicting state court acts without jurisdiction purely as a matter of state law."). Thus, Mr. Stamps's federal due process challenge is unexhausted.

9

Because Rule 35(c)(3)(VII) bars Mr. Stamps from returning to state court to exhaust his federal due process claim,[7] the district court concluded it is barred from federal habeas review unless he can demonstrate cause and prejudice or a fundamental miscarriage of justice. *Anderson*, 476 F.3d at 1139 n.7. Mr. Stamps points to no objective factor that impeded his efforts to comply with procedural rules and therefore cannot meet the cause-and-prejudice standard. Nor does Mr. Stamps allege that he is actually innocent in support of a fundamental-miscarriage-of-justice argument.

Accordingly, jurists of reason would not debate that the district court correctly imposed an anticipatory procedural bar, and we deny a COA as to Claim One.

## 2. Claim Three—Refiling of Charges

In Claim Three of his petition, Mr. Stamps asserts the state trial court violated his due process rights when it permitted the refiling of previously-dismissed charges against him. The CCA concluded that any error in the refiling of these charges was harmless. The district court dismissed Claim Three after concluding that Mr. Stamps had not fairly presented it to the state court as a federal constitutional issue.

"[J]urists of reason would find it debatable whether the district court was correct in its procedural ruling" as to the fair presentation of Mr. Stamps's federal due process claim in the state court proceedings. *Slack*, 529 U.S. at 478. In his opening brief on direct

---

[7] Mr. Stamps does not dispute that Rule 35(c)(3)(VII) is an independent and adequate state ground precluding federal habeas review, and our case law would not support such an argument. *See LeBere v. Abbott*, 732 F.3d 1224, 1233 n.13 (10th Cir. 2013) (listing unpublished cases finding Rule 35(c)(3)(VII) to be an independent and adequate state ground precluding federal habeas review).

appeal to the CCA, Mr. Stamps argued it is a "violation of Due Process for the prosecutor to dismiss cases for the sole purpose of refiling them in a different case." He also asserted that the "rules and statutes governing the commencement of criminal proceedings exist to protect against 'constitutionally prohibited' prosecutorial harassment" and that, in his case, the prosecutor was "similarly . . . prohibited from refiling the three previously dismissed counts." As support, Mr. Stamps cited a Colorado case, *People v. Abrahamsen*, in which the CSC considered whether a "pattern of dismissal of counts [by the prosecutor], followed by refiling of the same counts" violated the "concept of fundamental fairness guaranteed by the due process clause of the federal and Colorado constitutions." 489 P.2d 206, 209 (Colo. 1971). Jurists of reason could debate, though they would not necessarily agree, whether Mr. Stamps put the CCA on notice of a federal claim.

But to satisfy the two-part standard governing our authority to grant a COA when the district court has dismissed a petition on procedural grounds, Mr. Stamps must also show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack*, 529 U.S. at 478. To determine whether Mr. Stamps has met this requirement, we "simply take a quick look at the face of the [petition] to determine whether the petitioner has facially alleged the denial of a constitutional right." *Paredes v. Atherton*, 224 F.3d 1160, 1161 (10th Cir. 2000) (internal quotation marks omitted).

In his petition, Mr. Stamps alleges the prosecution originally filed two separate complaints against him, each of which contained multiple charges. The prosecution later

11

moved to dismiss one of those complaints, then refiled those charges, together with the charges in the undismissed complaint, in a combined criminal information containing all the charges on which Mr. Stamps was ultimately convicted. Mr. Stamps further alleges the prosecution failed to file a written statement of good cause for dismissing and refiling the charges in violation of Colo. Rev. Stat. Ann. § 16-5-205 (West 2018); Colorado Crim. P. 7(c)(1) and (c)(4), and *People v. Williams*, 987 P.2d 232, 236 (Colo. 1999); and that the result was so fundamentally unfair as to deprive him of his right to due process of law.

As a threshold matter, relief under § 2254 is not available for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Thus, to the extent that Mr. Stamps alleges violations of Colorado state statutes or rules of criminal procedure relating to the dismissal and refiling of charges, his claim is not cognizable on federal habeas.

And although Mr. Stamps alleges a violation of the fundamental fairness required by the Fourteenth Amendment, he provides no federal authority, nor has this court's independent research uncovered any, for the proposition that the one-time dismissal of charges for the purpose of refiling and consolidating them with the charges in a separate case implicates, much less violates, fundamental fairness or any other constitutional right. Accordingly, jurists of reason would not "find it debatable whether the petition states a

12

valid claim of the denial of a constitutional right," and we deny a COA as to Claim Three. *Slack*, 529 U.S. at 478.

### B. District Court's Merits Rulings

For a COA to issue on either of Mr. Stamps's remaining claims, he must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. To do so, Mr. Stamps must sufficiently allege that the state-court decisions he challenges are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). Bearing in mind our deference to state-court determinations on the merits under AEDPA, and limiting ourselves to a "general assessment of [the claims'] merits" as opposed to a "full consideration of the factual or legal bases adduced in support of the claims," *Miller-El*, 537 U.S at 336, we conclude that jurists of reason would not find the district court's assessment of these claims debatable or wrong.

### 1. Claim Two—Outrageous Governmental Conduct

In Claim Two, Mr. Stamps asserts that a detective, notary public, and deputy district attorney involved in his case engaged in outrageous governmental conduct in violation of his constitutional right to due process by respectively swearing to, notarizing, and submitting a fraudulent affidavit verifying the charges set forth in his criminal information.

13

The CCA established the facts relevant to this claim as follows.[8] On February 13, 2013, a prosecutor created and signed the criminal information filed in Mr. Stamps's case. When the prosecutor filed the information with the trial court the next day, he attached a detective's notarized affidavit, dated February 4, 2013, stating "I have personal knowledge that each offense set forth in this Information was committed as charged." ROA at 468. Because the detective executed the affidavit before the criminal information had been created, "it could not have properly verified the information as filed." ROA at 469. The CCA concluded, however, that the deficiency in the affidavit appeared to result from the dismissal and refiling of charges, and even if the prosecution should have obtained a new affidavit to verify the information, the improperly-dated affidavit did not so "shock the universal sense of justice" as to rise to the level of outrageous governmental conduct. ROA at 346.

The district court agreed, observing that the Supreme Court has never applied the Due Process Clause to invalidate a conviction for outrageous governmental conduct. And although this court has recognized the existence of an outrageous conduct defense (requiring the defendant to show that "the government's conduct [was] so shocking, outrageous, and intolerable the conduct offends the universal sense of justice," *United States v. Lacey*, 86 F.3d 956, 964 (10th Cir. 1996) (internal quotation marks omitted)), we have never invalidated any conviction on such grounds. Lacking any precedent,

---

[8] AEDPA requires federal courts to presume the state court correctly determined factual issues. 28 U.S.C. § 2254(e)(1). Mr. Stamps can rebut this presumption only with "clear and convincing evidence," *id.*, which he makes no attempt to do.

14

Mr. Stamps cannot show the state court's decision to be contrary to, or an unreasonable application of, clearly established Federal law. Nor has Mr. Stamps shown that the state court's decision that the defective affidavit resulted from the dismissal and refiling of charges, as opposed to intentional fraud, rests upon an unreasonable determination of the facts.

No reasonable jurist would find the district court's rejection of this claim on the merits debatable or wrong. Accordingly, we deny a COA as to Issue Two.

## 2. Claim Four—Eyewitness ID Suppression

In Claim Four, Mr. Stamps asserts that the state court misapplied the five-factor test for determining eyewitness credibility established by the Supreme Court in *Niel v. Biggers*, 409 U.S. 188 (1972). Specifically, Mr. Stamps contends that two eyewitnesses' identifications of him resulted from unconstitutionally suggestive procedures and the testimony should therefore have been suppressed as unreliable.

As relevant to this claim, the victim of a carjacking, M.A., and a witness to the carjacking, B.W., both identified Mr. Stamps as the perpetrator of the carjacking in one-on-one showup procedures. Mr. Stamps alleges that, during each showup, he was taken out of a police car, in handcuffs, with officers on both sides of him holding his arms. At a hearing on Mr. Stamps's motion to suppress, the trial court heard no testimony from the eyewitnesses themselves but did hear testimony from officers who were present at the time of the showups. The trial court noted that much of the officers' testimony was

15

hearsay but allowed their testimony because Mr. Stamps did not object.[9] Ultimately, the trial court denied Mr. Stamps's motion to suppress, and both M.A. and B.W. testified at trial.

The CCA determined the trial court had correctly applied the five factors of *Biggers* to determine that M.A.'s testimony was reliable, even if the procedure surrounding her identification of Mr. Stamps was suggestive. *See Neil*, 409 U.S. at 199–200 (setting forth the five factors to determine reliability as (1) "the opportunity of the witness to view the criminal at the time of the crime"; (2) "the witness' degree of attention"; (3) "the accuracy of the witness' prior description of the criminal"; (4) "the level of certainty demonstrated by the witness at the confrontation"; and (5) "the length of time between the crime and the confrontation"). The trial court considered that (1) M.A. saw the perpetrator run at her from approximately thirty feet away; (2) she was paying attention to his face and the gun; (3) she gave a "pretty detailed description" of the perpetrator matching Mr. Stamps; (4) she indicated ninety-nine percent certainty in her identification; and (5) only sixty to ninety minutes passed between the crime and the identification. ROA at 352. Although the CCA ruled the trial court had erred in finding B.W.'s identification reliable, it deemed the error harmless because B.W.'s testimony

---

[9] Mr. Stamps argues the trial court should have been prevented from using police testimony in place of eyewitness testimony when assessing the *Biggers* factors. But he points to no clearly established law as determined by the United States Supreme Court in support of this claim. Nor does he offer any clearly established law in support of his conclusory argument that the trial court should have held a second, separate hearing to determine reliability. Neither argument, therefore, can support his petition for federal habeas relief. 28 U.S.C. § 2254(d)(1).

16

served only to corroborate M.A.'s properly-admitted testimony and the government presented evidence that Mr. Stamps was apprehended in M.A.'s stolen car in possession of a fake gun shortly after the carjacking.

With regard to M.A.'s testimony, as the district court observed, the CCA applied the clearly established federal law of *Neil v. Biggers* to determine that M.A.'s testimony was reliable and had been properly admitted despite the suggestive pre-trial identification procedure. *See* 409 U.S. at 199–200. Because reliability is a factual issue, we presume the state court's determination to be correct, and Mr. Stamps can only overcome this presumption by a showing of "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Mr. Stamps makes no attempt in his § 2254 petition to meet that burden.

With respect to B.W.'s testimony, we consider whether reasonable jurists would debate the district's conclusion that the CCA reasonably applied harmless-error analysis. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Evans v. Lock*, 193 F.3d 1000, 1002–03 (8th Cir. 1999) (improper identification testimony subject to harmless error analysis); *United States v. Ciak*, 102 F.3d 38, 42–43 (2d Cir. 1996) (same); *United States v. Watkins*, 741 F.2d 692, 695–96 (5th Cir. 1984) (same); *Marshall v. United States*, 436 F.2d 155, 158-61 (D.C. Cir. 1970) (same). The harmless-error determination is based upon a thorough review of the state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000). Under *Brecht*, even assuming the admission of B.W.'s testimony amounted to constitutional error, it does not warrant habeas relief unless it "had a substantial and injurious effect" on the jury's verdict. 507 U.S. at 637. A

17

"substantial and injurious" effect exists only if we find ourselves in "grave doubt about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009.

Here, the district court found the CCA had reasonably determined that any presumed error in the admission of B.W.'s testimony was harmless because (1) B.W.'s identification merely corroborated M.A.'s properly-admitted testimony and (2) Mr. Stamps was apprehended in the stolen vehicle while in possession of a fake gun shortly after the carjacking. As a result, the district court concluded that nothing in the record shows the admission of eyewitness testimony against Mr. Stamps was "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002) (internal quotation marks omitted).

Because no reasonable jurist would find the district court's rejection of this claim debatable or wrong, we deny a COA as to Claim Four.

## III.     IN FORMA PAUPERIS MOTION

Mr. Stamps filed a motion to proceed in forma pauperis on appeal, which the district court denied. "In order to succeed on his motion, an appellant must show a financial inability to pay the required filing fees and the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal." *DeBardeleben v. Quinlan*, 937 F.2d 502, 505 (10th Cir. 1991). Mr. Stamps has not met this burden; our review of the record reveals no non-frivolous argument in support of his appeal. Accordingly, we also deny Mr. Stamps's motion to proceed in forma pauperis on appeal.

18

## IV.    CONCLUSION

Because Mr. Stamps fails to make a substantial showing of the denial of a constitutional right, we **DENY** his request for a COA and **DISMISS** the appeal. We also **DENY** Mr. Stamps's motion to proceed in forma pauperis on appeal.

Entered for the Court


Carolyn B. McHugh
Circuit Judge